LaVonnie HODGES, Petitioner,

v.

Jerry O'BRIEN, Warden, U.S.P., Leavenworth, et al., Respondents.

No. 83–3352.

United States District Court, D. Kansas.

May 31, 1984.

LaVonnie Hodges, petitioner, pro se.

Alleen Castellani, Asst. U.S. Atty., Tope-
ka, Kan., for respondent.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

LaVonnie Hodges, having paid the requi-
site fee, filed this petition for writ of habe-
as corpus with the Clerk of the Court pur-
suant to 28 U.S.C. § 2241. A rule to show
cause issued, respondent filed an answer
and return and petitioner has filed his tra-
verse. Having considered all materials
filed, the Court makes the following find-
ings and Order.

The facts pertinent to this action are
found to be as follows.

1. LaVonnie Hodges was convicted in
the United States District Court for the
Middle District of Alabama on January 16,
1979, of conspiracy to distribute thirty
pounds of marijuana. He was sentenced to

ten years imprisonment and a two-year special parole term.

2. On April 29, 1982, Hodges appeared before the United States Parole Commission hearing examiners. He was denied parole and ordered to serve his sentence until his statutory release date, which is presently in August, 1984.

3. Hodges' salient factor score was calculated as one. In 1982, the Parole Commission's guidelines cited possession with intent to distribute on the small scale of ten to forty-nine pounds of marijuana as an example of an offense of "low moderate" severity. The amount of time to be served suggested for an offender in this offense severity category with a salient factor score of one was sixteen to twenty-two months.

4. However, the Commission rated petitioner's offense as Greatest II severity, five categories above low-moderate, because a co-conspirator was shot and killed during the course of the criminal transaction. This rating placed petitioner in the guideline range of one-hundred plus months to be served before parole. The Commission's statement of reasons dated May 21, 1982, set forth the following explanation:

> Your offense behavior·has been rated as Greatest II Severity because it involved a marijuana transaction that resulted in the wrongful death of a human being. You have a salient factor score of 1. You have been in custody a total of 42 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 100 + months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.

5. The Parole Commission relied on information in Mr. Hodges' presentence investigation report for its findings.

6. The criminal behavior transpired in an abandoned amusement park in Dothan, Alabama on the night of September 29, 1978. Larry Pittman, the shooting victim, was involved in the buying and selling of marijuana and headed the conspiracy. John Mills and Ronnie Smith were enlisted by Pittman to meet and purchase marijuana from Bobby Gillis and Gregory Thomas that night in the park. However, Pittman had premeditated a scheme to defraud the sellers perhaps either with a deceptive roll of money or by scaring them into driving off and abandoning their marijuana. Mills and Smith met with Gillis and Thomas in the amusement park drive. Pittman accompanied by Hodges parked elsewhere and walked through woods to where the other men were negotiating. Thomas, Smith and Gillis were seated in an automobile driven by Thomas, and Mills was in the driver's seat of another automobile. The cars were positioned so that the drivers' windows were aligned. As Pittman arrived upon the scene a dispute erupted among the participants. Pittman struck Gillis on the head and a shotgun blast rang out followed by several shots from a gun. Both cars fled the scene with the body of Larry Pittman remaining. The cause of Pittman's death was identified as a bullet wound to the head "most probably" fired in a "Smith and Wesson" or Llama revolver. Similar bullet fragments were found in the interior right front door on the passenger's side of the auto driven by Thomas. Thomas was shot in the lower back apparently with the same type of bullet which had killed Pittman. Several weapons are mentioned as being present at the scene: a shotgun carried by Pittman, a pistol placed in the glovebox of one auto by Pittman and a revolver and/or a rifle carried by Hodges.

7. The State of Alabama originally indicted John Mills, a co-conspirator, for the first-degree murder of Larry Pittman, but these charges were dropped. The State then indicted Hodges for the murder, but the indictment was dismissed on December 9, 1981, for lack of speedy trial. Petitioner alleges, and it may be accepted as true, that the prosecution was not pursued due

to a lack of sufficient evidence to convict Hodges of murder. No one has been tried for the murder of Pittman.

8. Mills, Smith, Thomas and Gillis who were convicted co-conspirators as a result of this incident received prison sentences ranging from four to six years and have all been released.

9. Before the Commission and this Court Hodges not only denies any involvement in Pittman's death, but additionally claims that he was never involved in any criminal dealings with Pittman and that he knew nothing of the drug transaction. Of course, petitioner has been convicted, after trial, of the latter involvement and it is evident from the sentencing disparity and the presentence investigation report that he was the second most significant member of the conspiracy.

10. It appears that administrative remedies have been exhausted on petitioner's claims.

As grounds for this action, petitioner contends (1) that the Commission's notice of action does not reflect its real reasons for rating his offense severity as Greatest II, (2) that this violates due process notice requirements, (3) that the Commission has not demonstrated "good cause" under 18 U.S.C. § 4206(c) for this rating; (4) that the Commission is impermissibly holding him responsible for offense behavior that is not attributable either to him alone or the conspiracy in violation of 28 C.F.R. 2.19(c) and (5) that the Commission has failed to comply with the preponderance of the evidence standard set forth in 2.19(c). The Court considers each of these claims in turn.

Petitioner asserts that the Commission's "real reason" for the Greatest II offense severity rating was not the consequent killing as stated in its notice of action, but instead was the erroneous belief that Hodges was the most culpable of the co-defendants. In support of this assertion, petitioner reasons that if the Commission actually relied on the bare fact of Pittman's death as the basis for its decision, petitioner's co-conspirators should have been denied release on the same basis. As further

support, petitioner offers "the findings of the National Appeals Board Analyst" prepared in consideration of Hodges' national appeal which he alleges reflect the Commission's actual beliefs:

Non-disclosable information in the P S I, page (sic) 2 through 8, contains a preponderance of the evidence that subject's incident offense involved a gunfight in which 1 man was killed and another wounded. It appears subject was responsible for the shots which resulted in 1 killing and 1 wounding. The Greatest II rating is justified.

▇▇▇ The short answer to this claim is that the Commission denied parole, not because petitioner participated in or had actual knowledge of the killing, but because of the undisputed fact that a killing resulted from the offense behavior. It was the fact of the killing which the Commission particularized in its notice of action. *See, Campbell v. United States Parole Commission,* 704 F.2d 106, 110–111 (3d Cir.1983). The Commission's stated reasons are by definition the factors which the Commission considered most significant. *Bush v. Kerr,* 554 F.Supp. 726 (W.D.Wisc.1982). As long as the most significant reasons are sufficient to justify the action taken by the Commission and have a factual basis in the record, this Court will not attempt to second guess the Commission as to possible other "real" reasons. Reasons finally relied upon by the Commission are not unreal or inadequate simply because a staff analyst unofficially verbalized another possible reason, *see, Bush v. Kerr, supra at* 731. The suggestion during deliberations of even an improper basis for a decision would not impugn a final decision based on an independently justifiable basis, *id.*

Here, petitioner demonstrates nothing more than that one or two of the Commission's staff exhorted a different reason from that stated in the final notice of action for denying parole. The proposed reason suggested by the National Appeals Board analyst's findings was not relied upon in the final notice. In fact, the "National Appeals Board Findings and Conclu-

sions," evidently recorded after the Commissioners had considered the analyst's evaluation, express the opposite view that there was no evidence that Hodges killed Pittman, but that he should be held accountable because of his role in the criminal transaction from which the death resulted. However, the Court is not disposed to conclusively harmonize these two sets of comments. Surely, a federal district court is not obliged to search through unofficial memoranda preceding the final notice of action and try to reconcile all preliminary comments with the final notice in order to arrive at the Commission's "real" reasons. Instead, the Commission is required by 18 U.S.C. § 4206 to state its reasons for parole denial in its notice of action, and once it has done so this Court not only may but should regard the officially stated reasons as "real" and as the most significant, *see, Bush v. Kerr, supra.*

■■■ It is only the facts which constitute the most significant factors in the Commission's decision which are subject to this Court's review. *Solomon v. Elsea,* 676 F.2d 282, 289 (7th Cir.1982); *see also, Bush v. Kerr, supra.* Because the most significant factor in petitioner's case has not been disputed, our review need go no further, *id.* Whether the sources of less significant factors were correct or sufficiently weighty we need not decide, *id.* Accordingly, this Court finds that petitioner's arguments relying on remarks made by Commission personnel prior to the final notice of action present no ground for federal habeas corpus relief, *see Bush v. Kerr, supra.*

■■ The only instance when the Court may have the power to look behind the official notice of action at reasons alluded to during the deliberative process is when the reasons officially stated are unclear or otherwise questionable. In support of his assumption that the statement of reasons in his case is questionable, petitioner alleges that all his co-conspirators have been released and are not being denied parole on the ground that a killing occurred during the offense. Petitioner reasons that if the lone fact that the killing occurred was used as justification for denial of parole in his case then all co-defendants could have been denied parole for the same reason. From these premises, he infers that the Commission must be taken to have surreptitiously found him more responsible for the killing than the others.

The Court accepts petitioner's first two premises as true. Petitioner's co-defendants were given substantially shorter sentences than he and probably have been released. There is no question that the Commission could have denied parole for the same reason in the case of any other co-defendant with as poor a salient factor score who could have foreseen that a killing might occur (such as by virtue of his awareness that loaded guns would be brandished during the illegal and internally fraudulent transaction). However, that the Commission must have considered petitioner more responsible for the fatal shots is not the only inference which may be drawn from these premises. It might as plausibly have been that the various Commission personnel determining the different co-defendants applications did not recognize the killing as a possible reason for denying parole in those cases, or they may have been persuaded by a number of mitigating or other unique factors to grant parole despite the killing, or they may have simply decided in their discretion to grant parole to these individuals with nearer mandatory release dates. It could even be that parole was incorrectly granted to the co-defendants in which case the equitable remedy would hardly be another incorrect grant of parole to petitioner.

■■ In any event, there is no constitutional or statutory requirement of uniformity of parole decisions among equally culpable co-defendants. *Bush v. Kerr, supra; United States v. Atkins,* 618 F.2d 366 (5th Cir.1980); *Baker v. McCall,* 543 F.Supp. 498 (S.D.N.Y.1981), *aff'd,* 697 F.2d 287 (2d Cir.1982); *Marchesani v. United States of America,* 78–3175 (D.Kan. Aug. 8, 1979, unpublished); *see also, O'Connor v. MacDonald,* 449 F.Supp. 291 (N.D.Ill.1978).

As we have noted, there are several potential explanations for the Commission's action in denying parole to petitioner after it had been granted to his co-defendants. Petitioner does not establish the particular explanation urged by him. Discovering the precise explanation is unnecessary and may not be possible since neither the pertinent statutes nor the Commission's own regulations require the Commission to compare and analyze each corresponding factor in the parole cases of co-defendants and then justify any disparity on the record. The Commission is quite simply not required to avoid or explain disparity in parole treatment among co-defendants. Instead, the Commission is expected to make its decision based on the individual case, considering co-defendant disparity only in general.

In this case, the record shows that information concerning co-defendant disparity was presented to and considered by the Commission. While the Commission should consider a disparity in treatment of co-defendants, they are not required to act upon it, *Bush v. Kerr, supra, at* 733. Thus, the simple fact of co-defendant disparity in this case does not prove petitioner's claim that the Commission's "real" reason for denying parole was a belief that petitioner committed the killing. The Court concludes that petitioner's claim that the Commission's statement does not reflect its real reasons for denying parole is factually and legally without substance.

 The Court next considers petitioner's assertion that the Commission has violated due process and statutory notice requirements. The Commission articulated its reason for the Greatest II severity rating in petitioner's case as that the offense "involved a marijuana transaction that resulted in the wrongful death of a human being." Petitioner assails this statement on the ground that it was insufficient to inform him of the reasons for the Commission's action. This statement could not be clearer and could not possibly have failed to notify petitioner of the precise reason for his offense severity rating. A notice is constitutionally and statutorily adequate which informs the applicant of the grounds and factual basis for the decision and enables a court of review to determine whether parole has been denied for an impermissible reason. *Solomon v. Elsea, supra, at* 286; *see also, Young v. United States Parole Commission,* 682 F.2d 1105, 1108 n. 1 (5th Cir.1982); *Baker v. McCall, supra at* 500. The Constitution requires nothing more when parole is denied than that the inmate be informed "in what respects he falls short of qualifying for parole." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 16, 99 S.Ct. 2100, 2108, 60 L.Ed.2d 668 (1978). The statement of reasons given to petitioner satisfied these standards.

 Petitioner also contends that the Commission has violated 18 U.S.C. § 4206(c). He argues that this statutory provision, which requires a showing of "good cause" for parole decisions made outside the suggested guidelines, governs this case and alleges that the Commission has not made this showing. Petitioner reasons that a decision to enhance an offense severity rating beyond that specified for the offense of conviction amounts to an over-the-guidelines decision. While this practical effect argument is appealing, it does not significantly buttress petitioner's claim. Section 4206(c) was manifestly intended to apply to parole dates set beyond the range of months suggested in the guidelines for the particular offense severity and salient factor score assigned. No conventional over-the-guidelines decision was rendered in this case. It follows that 4206(b) rather than (c) applies. Subsection (b) requires written notice stating "with particularity the reasons for such denial." However, this Court would not hesitate to hold that the circumstance signified by the Commission would satisfy both the "good cause" requirement of (c) were it applied to the offense severity rating as well as the particularity requirements of either (b) or (c). The Commission exhibited "good cause" for going beyond the offense severity rating for the convicted offense by stat-

ing with particularity the aggravating circumstance of the killing.

The next basis for petitioner's challenge to the Commission's reliance on the fact of the killing is that it violates the Commission's own regulation, 28 C.F.R. § 2.19(c). Under this legal foundation, petitioner asserts that 2.19(c) allows the Commission to hold a putative parolee responsible only for conduct attributable directly either to him or to the conspiracy. More specifically he contends that 2.19(c) prohibits the Commission from holding him accountable for a killing which was neither committed by him nor an act done in furtherance of the drug conspiracy of which he was convicted.

Petitioner's construction of 2.19(c) is not mandated by the language of the regulation and is not supported by any legislative history or other legal authority. In determining the import of one of the Commission's regulations, this Court must look to the interpretation given that regulation by the promulgating agency. Obviously, the Commission is not interpreting its regulation according to petitioner's construction. The Court is not persuaded by petitioner's conclusional argument that this regulation must be construed so narrowly.

Petitioner's several procedural claims discussed herein seem to be attempts to formulate a legal foundation for a single theory which underlies his challenge to the Commission's decision. That theory is actually a challenge to the rationality or substance of the decision and is that the Commission should not be allowed to increase an inmate's time in confinement because of a killing which he did not commit.

■ This Court finds as a matter of law that the United States Parole Commission may increase an offense severity rating on the finding that the offense resulted in wrongful death to a person even if the parole applicant did not directly cause that result. *Campbell v. United States Parole Commission, supra; see, McArthur v. United States Board of Parole*, 434 F.Supp. 163 (S.D.Ind.1976), *aff'd*, 559 F.2d 1226 (7th Cir.1977); *Nunez-Guardado v. Hadden*, 722 F.2d 618 (10th Cir.1983); *Wil-*

*den v. Fields*, 510 F.Supp. 1295 (W.D.Wisc. 1981); *see also, Young v. United States Parole Commission, supra*. Moreover, it is not alternatively necessary, as petitioner urges, that the applicant be found to have "acted in concert" to cause the killing. All that is required is that the unfortunate result was a proximate or foreseeable outcome of the illegal venture in which the applicant participated. These legal findings are derived from the following rationale.

■ It is well-settled that in a parole determination proceeding, an offender may be held accountable not only for the offense of which he was convicted or an offense which might have been charged, but also for aggravating circumstances which were either caused or foreseeable by him. *See* 18 U.S.C. § 4206(a); *Young v. United States Parole Commission, supra; Nunez v. Guardado, supra; Page v. United States Parole Commission*, 651 F.2d 1083 (8th Cir.1981); *Campbell v. United States Parole Commission, supra; Payton v. Thomas*, 486 F.Supp. 64 (S.D.N.Y. 1980); *McArthur v. United States Board of Parole, supra*. Petitioner certainly could not claim that murder or serious bodily injury was not foreseeable during a fraudulent drug transaction conducted with him and other participants exhibiting loaded weapons. Thus, petitioner's allegation that he has not been prosecuted for the killing does not preclude consideration of the killing by the Commission.

Holding a parolee accountable for a killing which occurred during his offense behavior is neither arbitrary or capricious. The "felony-murder rule" has long been a viable, though frequently criticized, precept in the criminal law and survives in various forms in many jurisdictions. Generally, under this rule a person may be held fully accountable by separate conviction and sentence for a murder not actually committed by him but by an accomplice solely because it was a proximate or foreseeable consequence of his felonious pursuit. It would be illogical, in light of the accepted criminal culpability for such deeds, to hold that the

United States Parole Commission cannot rely upon similar aggravating circumstances to reach an administrative, predictive judgment to delay discretionary parole. Furthermore, it is not at all unreasonable for the Commission to entertain the opinion that a criminal activity which foreseeably and actually culminates in death is much more severe than similar criminal activity accomplished without disastrous results. Moreover, the offense severity rating is not a measure of the applicant's behavior patterns or character as might be said of the salient factor score, but literally is a severity rating of the offense and its circumstances. Thus, whether the participant directly caused, clearly conspired to effect or simply took part in a potentially dangerous offense leading to the severe circumstances may rationally cause little or no variation in the rating.

Under the Commission's regulations, the only severity rating which included the circumstance of serious bodily injury or death was Greatest II. There is no dispute that a killing occurred in connection with Hodges' offense behavior. It was therefore eminently reasonable for the Commission to rate petitioner's offense as Greatest II severity for the reason stated.

Petitioner's proffered legal foundation to be finally considered is that the Commission failed to adhere to the preponderance of the evidence standard set forth in 28 C.F.R. 2.19(c) which governs the resolution of factual disputes in parole considerations. The dispute to which the Commission is charged with having failed to apply this standard, was whether or not Hodges was responsible for the killing of Pittman. However, as fully discussed herein, the Commission did not state as its reason that Hodges was more culpable or that he actually fired the fatal shot but instead stated a different, legitimate and unanimous reason for its action. Since petitioner's greater culpability was not a finding expressly relied upon or necessary to justify the Commission's final decision, the Commission was simply never required to resolve this particular dispute. Thus, even if we accept as true that the Commission failed to resolve the question of petitioner's relative culpability according to the standard enunciated in 2.19(c), no ground for federal habeas corpus relief is presented.

Petitioner's arguments throughout his pleadings assume that the Commission denied parole in reliance on evidence that he killed Pittman. He also mischaracterizes respondent's answer and return as conveying this notion. Respondent argues and this Court has found that the statement of reasons contains legitimate, sufficient and rational reasons other than petitioner's responsibility for the killing as the basis for the Commission's action. As discussed herein, this fully disposes of all of petitioner's claims.

Nevertheless, the Court comments that even if the Commission had denied parole because it found petitioner more responsible for the killing, this Court would reject petitioner's claim that such a finding was not supported by a preponderance of the evidence.

■ Despite petitioner's allegation that he has seen his presentence report and "believes it presents no basis" for such a conclusion, the Court's inspection of this report reveals that it contains unambiguous evidence that he fired the shots which killed Pittman and injured Thomas. Petitioner does not claim that he was denied the opportunity to present contrary evidence and the record indicates that he and his representative's arguments were heard. In determining whether a particular aggravating circumstance existed, the Commission may take into account a broad range of factors which could not, for constitutional reasons, be considered in a court of law. *Mack v. McCune*, 551 F.2d 251 (10th Cir. 1977); *Dye v. United States Parole Commission*, 558 F.2d 1376 (10th Cir.1977). The Commission may and should consider all relevant information presented and, without question, is authorized to rely upon the presentence investigation report and hearsay contained therein. *Solomon v. Elsea, supra; Fatico v. Kerr*, 569 F.Supp. 448 (W.D.Wisc.1983); *Bush v. Kerr, supra;*

*Baker v. McCall, supra; Payton v. Thomas, supra; McArthur v. United States Parole Board, supra.* The Commission is not precluded from relying on such information by the applicant's mere conclusional statement that it is erroneous or false. Instead, after considering evidence from the applicant the Commission is authorized to formulate its own conclusions as to the verity of the information before it. The information and procedures which the Commission may utilize to reach findings are quite different from those required in a court of law due to the more subtle nature of the parole determination.

 The parole release decision has been clearly described by the United States Supreme Court as depending

"on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release," *at* 10, 99 S.Ct. at 2105.

A valid criminal conviction, with all its procedural safeguards, constitutionally extinguishes the convicted person's right to liberty until the expiration of a valid sentence and there is no constitutional right to early release, *Greenholtz v. Nebraska Penal Inmates, supra.* The existence of a statutory expectation of parole does not mean that there must also be repeated, adversary hearings in order to continue the confinement, *id., at* 14, 99 S.Ct. at 2107. Thus, the Commission is not required to consider and make findings on evidence in such a way that would tend to convert the process into an adversary proceeding and equate the Commission's determination with a guilt determination, *see id., at* 15, 99 S.Ct. at 2107. Consequently, procedures designed to elicit specific facts are not necessarily appropriate in a parole release determination, *id., at* 14, 99 S.Ct. at 2107. The Commission is charged with weighing information such as that found in the presentence report against any contrary evidence presented by the inmate. In evaluating conflicting evidence the Commission is bound by 28 C.F.R. § 2.19(c) to:

resolve such disputes by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability.

That a particular fact could not be proven under the higher standard required in a criminal trial does not necessarily preclude its finding by a preponderance of the evidence, *Fatico v. Kerr, supra.* Given the nature and purpose of the parole process, it should be obvious that the United States Parole Commission is not required to retry the offense of conviction or to conduct a trial of any aggravating circumstance which it may rely upon in setting a severity rating simply because the putative parolee continues to proclaim his innocence of all wrong-doing. Of course, the Commission may not make a decision based on no evidence or on evidence shown to be false or incorrect. However, when the Commission has evidence in the record to support an adverse finding, the burden is on the applicant not just to deny but to refute that evidence with weightier evidence.

Petitioner in this case claims both that there was no evidence that he was responsible for the killing and that the evidence was insufficient. His claim that there was no evidence is plainly refuted by the record. The presentence report contains such evidence. There was enough evidence for the state to indict petitioner for the murder of Pittman, and there is circumstantial evidence with respect to the type of weapons fired at the scene and the bullets causing the injuries which is suggestive of petitioner's culpability.

 Thus, petitioner's actual claim must be that the evidence was not sufficient to satisfy the Commission's regulatory standard. While the Commission is required to utilize the preponderance of the evidence standard in its deliberations, judicial review is not simply a repetition of that process. A federal court has no authority to reweigh or redetermine the credibility of

the evidence considered by the Commission. *Hearn v. Nelson,* 496 F.Supp. 1111 (D.Conn.1980). Congress did not intend for the court to apply a sufficiency of the evidence standard in reviewing the Commission's findings. Instead, a federal court is limited to determining whether the Commission's decision constitutes an abuse of discretion, and to make this determination the court need only consider whether the information relied on by the Commission is sufficient to provide a factual basis for its reasons. *Solomon v. Elsea, supra* at 290; *Rumfelt v. United States of America,* 76–1708 (10th Cir. Dec. 17, 1976, unpublished), *citing, Zannino v. Arnold,* 531 F.2d 687, 691 (3d Cir.1976). The court's inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions. *Solomon v. Elsea, supra; McArthur v. United States Board of Parole, supra; Fatico v. Kerr, supra.*

There is evidence in petitioner's presentence report and other parts of the record before this Court which could be held as sufficient to provide a rational factual basis for a Commission finding that petitioner was responsible for the killing.

Having considered each of petitioner's claims, the Court finds no grounds for federal habeas corpus relief.

IT IS THEREFORE ORDERED that this action be dismissed and all relief denied.